UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDREW BRADLEY LAURA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00421-JRO-MJD |
| | ) | |
| CHARLES ELOMBA FNP, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Andrew Bradley Laura filed this action contending that his constitutional rights were violated while he was incarcerated at the Reception Diagnostic Center ("RDC"). Dkts. 1, 21. Plaintiff alleges that Defendant NP Charles Elomba was deliberately indifferent to his broken hand. Dkts. 20, 21.

Defendant moved for summary judgment arguing that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, the motion for summary judgment, dkt. [37], is **GRANTED** and the action is **DISMISSED WITHOUT PREJUDICE.**

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to

the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

### A. Plaintiff's Claims

Laura proceeds on Eighth Amendment deliberate indifference to medical need claims against NP Elomba, a medical provider at RDC. Dkt. 21. Specifically, Laura alleges that he entered the RDC and went through a medical screening in which he informed NP Elomba that he may have a broken hand. Dkt. 20 at 2.

NP Elomba prescribed pain medication and ordered an X-ray, which occurred on December 2, 2024. *Id.* Laura was told the results would be forwarded to a doctor, but he received no follow up until he was transferred to another IDOC facility on December 18, 2024. *Id.* at 3.

Laura transferred to Heritage Trail and then Putnamville Correctional Facility, where he received medical treatment for his hand that is not at issue in this lawsuit. Dkt. 20 at 3; Dkt. 37-1. Laura was informed by a non-defendant doctor at Heritage Trail on January 24, 2025, that his hand was possibly broken, and he received a CT scan on April 2, 2025, while he was at Putnamville. Dkt. 20 at 3; Dkt. 42 at 2; Dkt. 42-1 at 5.

**B. Offender Grievance Process**

At all times relevant to the claims in this suit, Laura was incarcerated at RDC, a prison maintained by the Indiana Department of Correction ("IDOC"). Dkt. 20. The IDOC has a standardized offender grievance process which was in place during the time Laura alleges his rights were violated. Dkt. 37-2. Laura was informed of the grievance process during his intake at RDC and received an inmate handbook with the same instructions. Dkt. 37-3 at 6.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the IDOC policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies using that procedure. Dkt. 37-2. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting

a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 1, 3. An inmate must submit a formal grievance within ten business days from the date of the incident giving rise to the complaint. *Id.* at 9. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id.*

**C. Plaintiff's Participation in the Grievance Process**

Laura did not file any grievance while housed at RDC. *See* dkt. 37-1 (Laura's IDOC grievance records).

Laura's first grievance (No. 25-210205) was submitted on April 5, 2025, while he was housed at Putnamville. *Id.* at 4. In this grievance, he complains of the actions of the doctor and X-ray technician at RDC and the doctor at Heritage Trail. *Id.* This grievance was rejected as unprocessed for containing multiple issues. *Id.* at 3.

Laura filed a grievance attempting to correct the issues in his returned grievance (also given log no. 25-210205) on April 22, 2025, complaining of the actions of the "Doctor at RDC". *Id.* at 6. This grievance was denied and fully exhausted. *Id.* at 7–15.

Laura filed a second grievance (No. 25-210746) on April 22, asking for his returned grievance to be processed. *Id.* at 18. This grievance was returned because grievance no. 25-210205 was being processed and reviewed. *Id.* at 17.

Laura also filed a grievance (No. 25-219215) on June 29, 2025, related to a tort claim, *id.* at 20, and a grievance (No. 26-251656) on April 14, 2026, related to his release date.

## III. DISCUSSION

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). The Seventh Circuit "has taken a strict approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes . . . ." *Id.*; *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust . . . .").

"Because exhaustion is an affirmative defense," Defendant faces the burden of establishing that "an administrative remedy was available and that [Laura] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

NP Elomba has met his burden of proving that Laura "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The undisputed record reflects that Laura was aware of the grievance process and failed to timely file a formal grievance related to his allegations against NP Elomba. Dkt. 37-1.

Laura argues in opposition that he did timely exhaust through his April 2025 grievance because he was not informed of a possible broken hand until January 24, 2025, and he didn't receive the CT scan until April 2, 2025. Dkt. 42 at 2. These arguments fail. Laura's proceeding claim in this action is against NP Elomba regarding his treatment at RDC in December 2024. He is not proceeding on claims related to his January 24 visit with a non-defendant doctor nor the April 2 scan. Additionally, while Laura argues that he was not informed of a possible broken hand until January 24, and not confirmed until April 2, his verified complaint details that he reported to NP Elomba that he may have a broken hand at RDC and was given medication and an X-ray for it. Dkt. 20 at 2. His claim is premised on the allegation that this treatment, and lack of follow up after the X-ray, was deliberately indifferent.

"A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation." *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Laura's April 2025 grievances could not have

given NP Elomba notice or opportunity to address Laura's complaint and did not comply with the grievance policy that required grievances to be initiated ten days after the incident giving rise to the complaint. Laura's months-belated grievances fall short of the "strict compliance" required to exhaust. *Wilborn*, 881 F.3d at 1004.

In short, Laura does not dispute that he did not initiate a grievance regarding NP Elomba's treatment of him at RDC until April 5, 2025, several months after he left RDC in December 2024. Dkt. 37-3 at 4; Dkt. 38. Accordingly, Laura did not complete the available administrative process as required before filing this lawsuit. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against NP Elomba must be dismissed without prejudice. *Id.*; *see also Ford v. Johnson*, 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## IV. CONCLUSION

For the above reasons, Defendant's motion for summary judgment, dkt. [37], is **GRANTED**. Judgment dismissing this action without prejudice shall now issue.

**SO ORDERED**.

Date: 10/6/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

ANDREW BRADLEY LAURA
106 8th Street Apt #3
Logansport, IN 46947

All Electronically Registered Counsel